HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANCORA TECHNOLOGIES, INC.,

Plaintiff,

v.

HTC AMERICA, INC. and HTC CORPORATION,

Defendants.

CASE NO. C16-1919 RAJ

ORDER

**I.  INTRODUCTION**

This matter comes before the Court on Defendants HTC America, Inc. and HTC Corporation's (collectively, "Defendants") Motion to Dismiss. Dkt. # 18. Plaintiff Ancora Technologies, Inc. ("Ancora") opposes the Motion. Dkt. # 30. Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons set forth below, the Court **GRANTS** Defendants' Motion to Dismiss. Dkt. # 18.

## II. BACKGROUND

Ancora alleges that Defendants have infringed and are continuing to infringe "at least claim 1 of U.S. Patent No. 6,411,941 ("the '941 Patent") by making, offering for sale or use, and/or selling, distributing, promoting or providing for use by others in this district and elsewhere in the United States, products including, but not limited to, the HTC One M7, HTC One Mini, HTC One Max, HTC One M8, HTC One mini 2, HTC Desire 620, HTC One M9, HTC One M8s, HTC One A9 and HTC 10 ("Accused Devices")." Dkt. # 1 ¶ 13.

Ancora asserts the '941 Patent which is entitled, "Method of Restricting Software Operation Within A License Limitation." Dkt. # 19 Ex. A. It was issued on June 25, 2002 and a reexamination certificate was issued on June 1, 2010. The '941 Patent purports to improve on prior art by providing a different method of identifying and restricting an unauthorized software program's operation. *Id.* at 4. The specification describes previous methods of checking license coverage of software as vulnerable to hacking, or expensive and inconvenient to distribute. *Id.* The '941 Patent teaches a method and system of preventing unauthorized use of software by checking whether a software program is licensed and stopping the program or taking other action if it is not. The license verification "key" is stored in a computer's "Basic Input/Output System" ("BIOS"). The patent specification states that the level of programming expertise needed to alter the contents of a computer's BIOS without accidentally damaging it is very high, making it harder for a hacker to tamper with the "key" when it is stored in the BIOS as opposed to other storage areas. This method also makes use of the existing computer

hardware, which eliminates the expense and inconvenience of using additional hardware.

*Id.*

Independent Claim 1 of the '941 Patent claims:

1. A method of restricting software operation within a license for use with a computer including an erasable, non-volatile memory area of a BIOS of the computer, and a volatile memory area; the method comprising the steps of:

    selecting a program residing in the volatile memory,

    using an agent to set up a verification structure in the erasable, non-volatile memory of the BIOS, the verification structure accommodating data that includes at least one license record,

    verifying the program using at least the verification structure from the erasable non-volatile memory of the BIOS, and

    acting on the program according to the verification.

Dkt. # 19 Ex. A. Defendants assert that Independent Claim 1 is representative of the other claims in the '941 Patent.

The '941 Patent has been involved in litigation against Microsoft Corporation, Dell Incorporated, Hewlett Packard Incorporated, Toshiba America Information Systems, and most recently, Apple Incorporated. *See Ancora Techs., Inc. v. Toshiba America Information Systems Inc. et al.,* No. 09-cv-270-MJP (W.D. Wash.); *Ancora Techs., Inc. v. Apple Inc.*, No. 11-cv-6357-YGR (N.D. Cal.); *Ancora Techs., Inc. v. Apple Inc.*, No. 15-cv-3659-YGR (N.D. Cal.); *Ancora Techs., Inc. v. Apple, Inc.*, 744 F.3d 732, 736 (Fed.

Cir. 2014). None of the prior litigation dealt with the issue of whether the '941 Patent is directed to a patent-ineligible concept[1].

### III. LEGAL STANDARD

**A. FRCP 12(b)(6)**

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v.*

---

[1] In *Ancora Tecks., Inc. v. Apple Inc.*, No. 15-cv-3659-YGR (N. D. Cal.), the parties briefed and argued a Rule 12(c) motion for judgment on the pleadings on the issue of subject matter eligibility. The parties settled the case prior to the issuance of a decision on the motion.

*Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## IV. DISCUSSION

Defendants argue that Ancora fails to state a claim under Rule 12(b)(6) because the patent it asserts claims a patent-ineligible concept and because Ancora fails to allege facts to support a claim for increased damages under 35 U.S.C. § 283.

### A. Patent-Ineligibility

Courts may consider patent eligibility issues on the pleadings and prior to discovery or claim construction. While it is often necessary to resolve claim construction disputes prior to a § 101 analysis in order to gain a full understanding of the claimed subject matter, "claim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012). The "words of a claim are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed.Cir. 2005). Where, as here, the basic character of the claims can be understood on their face for the purposes of the § 101 analysis, patentability can be examined at the pleading stage. *Bancorp*, 687 F.3d at 1274; *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,* 776 F.3d 1343, 1349 (Fed. Cir. 2014)*; see also Intellectual Ventures I LLC v. Erie Indem. Co.*, No. 2017-1147, 2017 WL 5041460 (Fed. Cir. Nov. 3, 2017).

Section 101 of the Patent Act provides that "[w]hoever invents or discovers a new and useful process, machine, manufacture, or composition of matter, or any new and

useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.  However, "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013).

The Supreme Court has established a "two-step analytical framework to identify patents that, in essence, claim nothing more than abstract ideas. *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014).  The first step is to determine whether the claim is directed to a patent-ineligible concept, such as an abstract idea. *Id.*  To distinguish claims that are directed to abstract ideas from those that merely involve abstract ideas, courts look to "the 'focus' of the claims" and "their 'character as a whole.'" *Elec. Power Grp., LLC v. Alstom, S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).  If the claim is directed to a patent-ineligible concept, the court examines the claim limitations to determine whether they furnish an "inventive concept" that transforms the abstract idea into a patent-eligible application of that idea. *Alice*, 134 S. Ct. at 2355.  The second step of this framework is a "search for . . . an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.*

**B.  Failure to State a Claim**

> *a.  Patent-Ineligible Concept*

Where, as here, the claims at issue are directed toward computer-related technology, the first step in the *Alice* inquiry "asks whether the focus of the claims is on the specific asserted improvement in computer capabilities or, instead, on a process that

qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016).  In *Enfish*, the patents were specifically directed to a self-referential table for a computer database rather than simply focusing on the individual functions performed by that self-referential table, i.e. storing, organizing, and retrieving memory in a logical table.  The Federal Circuit Court found that the claims at issue were directed to a "specific improvement to the way computers operate" and not "simply adding conventional computer components to well-known business practices." *Id.* at 1338.

Claim 1 of the '941 Patent claims a method of selecting a program, setting a verification structure in the non-volatile memory of the BIOS, verifying the program, and acting on the program according to the verification.  Dkt. # 19 Ex. A.  Defendant argues that the claims in the '941 Patent are directed to the abstract idea of controlling software access based on data stored in a particular location.  Dkt. # 18.  In its' Response, Ancora argues that claim 1 recites the installation of a "verification structure" in the non-volatile memory area of the BIOS, which constitutes a modification to computer hardware necessary to implement its software verification process, and thus, an improvement to computer functionality.  Dkt. # 30.  Ancora focuses on the set up of a verification structure in the non-volatile memory area of the BIOS and the use of that structure to verify whether a program is licensed, as the aspect of the claim that creates a "technologically superior method to reduce software piracy." *Id.*  Ancora specifically notes this constitutes "an interaction that was not known or performed in the prior art . . . . result[ing] in a technological improvement." Dkt. # 30 at 9.

However, "[t]he important inquiry for a § 101 analysis is to look to the claim." *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1322 (Fed. Cir. 2016) (finding that the district court erred relying on technological details set forth in the patent's specification and not set forth in the claims to find an inventive concept). It is "relevant to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea, even at the first step of the *Alice* analysis." *Enfish, LLC*, 822 F.3d at 1335. However, "any novelty in implementation of the idea is a factor to be considered only in the second step of the *Alice* analysis." *Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 715 (Fed. Cir. 2014). Thus, Ancora's argument that the claims at issue are directed toward an improvement in computer functionality because the interaction between a verification structure within the BIOS and the program is a novel method to check licensing is better considered in step two of the *Alice* analysis.

Ancora's argument that the placement of the verification structure in the BIOS constitutes an improvement in how computers function is also unpersuasive. The claims of the '941 Patent are not focused on how usage of the BIOS to store the verification structure leads to an improvement in computer security. *See Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017). Instead, the claim calls for the set-up of the verification structure data in the erasable, non-volatile memory of the BIOS, a memory that is typically used to store data. The ease or difficulty of altering this data does not change its function, or represent an improvement in its function. Further,

Ancora's reliance on a comparison to the claims in *Enfish* does not support its argument. In *Enfish*, the patents were specifically directed to a self-referential table for a computer database rather than simply focusing on the individual functions performed by that self-referential table, i.e. storing, organizing, and retrieving memory in a logical table. *Enfish, LLC*, 822 F.3d at 1338. While the claim at issue refers to "using an agent to set up a verification structure in the erasable, non-volatile memory of the BIOS," it provides no other details regarding how the agent sets up the structure, the structure itself (other than it must accommodate data that includes at least one license record), or other details as to how this structure within the BIOS creates an improvement in computer function. Reading the claims as a whole it is apparent that their focus is on the abstract concept of selecting a program, verifying whether the program is licensed, and acting on the program according to the verification. The requirement that the verification "key" be placed as data within the BIOS memory is at best a limitation of the invention, and does not make the concept of the claims any less abstract.

Ancora's argument that the patent at issue was not rejected by a patent examiner as directed to an abstract idea and was certified after re-examination in 2010, is similarly unpersuasive. All patents must be approved by an examiner at the USPTO in order to become a patent. The fact that these patents were not rejected by an examiner is not enough to support its argument that the patents are directed to a patent-eligible concept.

        b. *Inventive Concept*

"Claims that 'amount to nothing significantly more than an instruction to apply [an] abstract idea ... using some unspecified, generic computer' and in which 'each step

does no more than require a generic computer to perform generic computer functions' do not make an abstract idea patent-eligible." *Intellectual Ventures I LLC*, 838 F.3d at 1315 (quoting *Alice*, 134 S.Ct. at 2359–60). Further, claiming the improved speed or efficiency inherent with applying the abstract idea on a computer does not provide a sufficient inventive concept." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015). "An inventive concept that transforms the abstract idea into a patent-eligible invention must be significantly more than the abstract idea itself, and cannot simply be an instruction to implement or apply the abstract idea on a computer." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016).

Ancora argues that, like the claims in *Bascom*, in this case, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). The '941 Patent claim 1 recites using an agent to software licensing verification structure in the BIOS, and then actually verifying a program using that verification structure. Ancora asserts that these two elements of the claim are a non-conventional arrangement of known, conventional pieces. However, it is unclear how the interaction between these two elements constitutes an inventive concept. Nothing in Claim 1 or the other limitations in the '941 Patent sufficiently recite how the use of an agent to place the structure in the BIOS, or placing and using such a structure in the BIOS leads to an improvement in computer functionality. Specifying that the BIOS be used to house the verification structure is not sufficiently transformative so as to make

this innovation more than a requirement that a generic computer to perform generic computer functions. Storing data in the memory of a computer component that generally stores data is not transformative. The Court disagrees that these limitations transform the abstract idea into something patent-eligible in application.

Ancora also argues that the method claimed is patent-eligible because it passes the "machine-or-transformation" test. "A claimed process can be patent-eligible under § 101 if: '(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing.'" *Ultramercial, Inc.*, 772 F.3d at 716 (citing *In re Bilski*, 545 F.3d 943, 954 (Fed.Cir. 2008) (*en banc), aff'd on other grounds*, *Bilski*, 561 U.S. 593, 130 S.Ct. 3218). Here, the claimed process fails the second prong of the machine-or-transformation test. Placing a verification structure within the BIOS does not transform it into a "different state or thing". As mentioned above, storage of data in a pre-existing memory location that typically stores data does not create a different entity, just as "[a]dding a computer to otherwise conventional steps does not make an invention patent-eligible." *Id.* Therefore, as the '941 Patent claims are directed to a patent-ineligible abstract idea, Defendant's Motion to Dismiss is **GRANTED[2].**

---

[2] Defendants argue that Ancora fails to allege facts supporting a claim for increased damages under 35 U.S.C. § 284 because the Complaint does not allege facts to support a claim that Defendants' alleged infringement of the '941 Patent was willful or egregious. Defendants cite to the decision in *Halo Elecs., Inc. v. Pulse Elecs., In.*, 136 S. Ct. 1923 (2016), in which the Supreme Court stated that "[s]ection 284 allows district courts to punish the full range of culpable behavior . . . . such punishment should generally be reserved for egregious cases typified by willful misconduct." *Id.* at 1933-1934. As the Court is granting Defendants' Motion to Dismiss, it will not address this argument at this time.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss. Dkt. # 18.

Dated this 14th day of December, 2017.

*Richard A. Jones*
———————————————
The Honorable Richard A. Jones
United States District Judge