Honorable Richard A. Jones

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

ANCORA TECHNOLOGIES, INC.,

    Plaintiff,

v.

HTC AMERICA, INC., a Washington Corporation, HTC CORPORATION, a Taiwanese corporation,

    Defendants.

) Civil Action No. 2:16-cv-01919 -RAJ
)
) **DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**

---

Defendants' Responsive
Claim Construction Brief
Case No. 2:16-cv-1919-RAJ

Knobbe, Martens, Olson & Bear, LLP
925 Fourth Ave, Suite 2500, Seattle, WA 98104
(206) 405-2000

# TABLE OF CONTENTS

Page No.

A.   "license" and "license record" ................................................................................. 1

B.   "BIOS" ........................................................................................................................ 1

    1.   Prior Decisions Did Not Address Memory ................................................... 1

    2.   Dr. Weissman Never Supported Ancora's Construction ............................... 3

    3.   The Patentee Explicitly Characterized an Aspect of the Alleged Invention ......................................................................................................... 3

C.   "using an agent…" ..................................................................................................... 4

    1.   "agent" Lacks Structure Even if Construed as Software ............................... 5

    2.   Commands in the Specification Do Not Save "Agent" from § 112(f) ......................................................................................................... 5

    3.   Commands Are Not an Algorithm ................................................................. 7

    4.   Enablement is a Separate Requirement From § 112(f) and Indefiniteness ................................................................................................. 9

    5.   Ancora's Pre-*Williamson* Cases Cannot Save the Agent ............................. 10

    6.   HTC's Means-Plus-Function Position Has Been Consistent ...................... 10

    7.   The Claims Fail to Recite *How* to Perform the "to set up" Function ........ 11

D.   "acting on the program according to the verification" ........................................... 12

E.   "license authentication bureau" (Claim 2) .............................................................. 12

# TABLE OF AUTHORITIES

Page No(s).

*Advanced Ground Info. Sys., Inc. v. Life360, Inc.*,
    830 F.3d 1341 (Fed. Cir. 2016) ................................................................................... 5, 10

*Ancora Techs., Inc. v. Apple, Inc.*,
    744 F.3d 732 (Fed. Cir. 2014) ................................................................................... 1, 2, 3

*Blackboard, Inc. v. Desire2Learn Inc.*,
    574 F.3d 1371 (Fed. Cir. 2009) ................................................................................. 9, 10

*Catalina Marketing Int'l v. Coolsavings.com*,
    289 F.3d 801 (Fed. Cir. 2002) ........................................................................................ 1

*Erfindergemeinschaft UroPep GbR v. Eli Lilly and Co.*,
    No. 2:15-cv-1202-WCB, 2016 WL 6138124 (E.D. Tex. Oct. 21, 2016) ........................ 7

*Function Media, L.L.C. v. Google, Inc.*,
    708 F.3d 1310 (Fed. Cir. 2013) ...................................................................................... 9

*Halliburton Oil Well Cementing Co. v. Walker*,
    329 U.S. 1 (1946) ............................................................................................................ 7

*Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*,
    No. 2:16-cv-057, 2017 WL 2691227 (E.D. Tex. June 22, 2017) ................................. 10

*Ibormeith IP, LLC v. Mercedes Benz USA, LLC*,
    732 F.3d 1376 1382 (Fed. Cir. 2013) ............................................................................. 9

*Martek Biosciences Corp. v. Nutrinova, Inc.*,
    579 F.3d 1363 (Fed. Cir. 2009) .................................................................................... 12

*Masco Corp. v. United States*,
    303 F.3d 1316 (Fed. Cir. 2002) .................................................................................... 11

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*,
    344 F.3d 1205 (Fed. Cir. 2003) ...................................................................................... 8

*Media Rights Techs. Inc. v. Capital One Fin. Grp.*,
    800 F.3d 1366 (Fed. Cir. 2015) ................................................................................ 5, 11

*Northpeak Wireless, LLC v. 3COM Corp.*,
    674 Fed. App'x. 982 (Fed. Cir. 2016) ......................................................................... 3, 4

**TABLE OF AUTHORITIES**
(*cont'd*)

**Page No(s).**

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ................................................................................. 2, 3, 11

*Seal-Flex, Inc. v. Athletic Track & Ct. Const.*,
    172 F.3d 836 (Fed. Cir. 1999) ............................................................................................ 11

*Synchronoss Techs., Inc. v. Dropbox Inc.*,
    No. 16-cv-00119, 2017 WL 6059302-HSG (N.D. Cal. Dec. 7, 2017) ................................ 7

*Triton Tech of Texas, LLC v. Nintendo of Am., Inc.*,
    753 F.3d 1375 (Fed. Cir. 2014) .......................................................................................... 9

*Twin Peaks Software, Inc. v. IBM Corp.*,
    690 Fed. App'x 656 (Fed. Cir. 2017) ............................................................................... 10

*Verint Sys. Inc. v. Red Box Recorders Ltd.*,
    166 F. Supp. 3d 364 (S.D.N.Y. 2016) .............................................................................. 10

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015) .................................................................................... 7, 10

*Zeroclick, LLC v. Apple, Inc.*,
    891 F.3d 1003 (Fed. Cir. 2018) ................................................................................. 5, 6, 7

**OTHER AUTHORITIES**

35 U.S.C. § 112 ............................................................................................................*passim*

Ancora implores the Court to shrug off HTC's proposed constructions as foreclosed by prior litigations. But that would ignore the issues raised by different accused products in this case and changes to the law regarding functional claim limitations. Ancora's other positions fail to address meaningfully the intrinsic evidence and expert testimony. On the other hand, HTC's proposed constructions find factual support in the patent specification and file history.

A.     "license" and "license record"

Ancora argues that the preamble of Claim 1 "is not limiting because it merely serves as an introduction to the rest of the claim." Dkt. 59 at 7. But Ancora ignores that the preamble provides meaning for the "license record" and the antecedent basis for "the volatile memory" and "the erasable, non-volatile memory of the BIOS" in the body of the claim. Even the lone case that Ancora cites, *Catalina Marketing Int'l v. Coolsavings.com*, 289 F.3d 801, 810-11 (Fed. Cir. 2002), explains that where, as here, "language appears in both the preamble and body of" a claim, "[b]y virtue of its inclusion in the body of" the claim, that language limits the claim.

Ancora makes no effort to explain what "license" means in light of the claims and specification. Instead, it suggests that "license" does not require "permission granted by another." Dkt. 59 at 7. Such an understanding of "license" leaves it meaningless.

B.     "BIOS"

    1.     **Prior Decisions Did Not Address Memory**

None of the previous BIOS claim constructions involved the memory. And none preclude BIOS being a memory, as Ancora now implies based on cropped quotes. Dkt. 59 at 8-10. The full context of those quotes confirms that BIOS is memory.

Ancora begins by short quoting two sentences from the Federal Circuit's *Apple* opinion. *Id.* at 9 (quoting *Ancora Techs., Inc. v. Apple, Inc.*, 744 F.3d 732, 733 (Fed. Cir. 2014)). First, Ancora quotes that the '941 Patent "discloses using the memory space associated with the computer's basic input/output system (BIOS)." Dkt. 59-9 (Ex. 8) at 721. That quote merely paraphrased the specification. Ancora also overlooks the corresponding string citation to the descriptions of BIOS memory. *See, e.g.*, 59-1 ('941 Patent at 1:50-52) ("non-volatile portion of the BIOS"); *id.* at 1:67 ("non-volatile section of the BIOS"). And the Federal Circuit's next

sentence stated "the contents of the **BIOS memory space** may be modified." *Apple*, 744 F.3d at 733 (emphasis added).

Second, Ancora suggests the Federal Circuit explained that BIOS code has memory associated with it, instead of BIOS being memory. Dkt. 59 at 9 (quoting *Apple*, 744 F.3d at 739). That quote comes from the following passage:

> The applicants responded by amending the claims to restrict the covered non-volatile memory to a *memory area of the computer BIOS* and did not dispute the examiner's understanding of "volatile" and "non-volatile" memory in their ordinary meaning (for the anticipation rejection). Amendment dated Nov. 14, 2001, in Appl. No. 09/164,777. The examiner was clearly satisfied *both* as to anticipation *and* as to indefiniteness, even though the amended claim still referred to "volatile" memory standing alone (and "nonvolatile" areas associated with the BIOS), because he allowed the amended claims.

*Apple*, 744 F.3d at 739 (emphasis added). In context, the quote refers to claim amendments made in response to an indefiniteness rejection. Neither cropped quote demonstrates that "BIOS is not a memory" as Ancora now argues. That opinion did not include the construction of BIOS.

Ancora next block quotes the Patent Office's decision granting ex parte reexamination. *See* Dkt. No. 59 at 9 (citing Ex. 3 at 426-27). But Ancora says nothing about the passage, much less how it "clearly explained" Ancora's proposed construction. That passage first recites the definition of BIOS from the Microsoft Computer Dictionary that forms part of both parties' constructions. The remainder of the passage refers to "programs *located outside of* the BIOS," a table "*in* BIOS," or "*residing in* the BIOS." Those references do not describe mere instructions, they confirm BIOS is memory. Moreover, the Patent Office applies the broadest reasonable construction and not the *Phillips* standard. Dkt. 59-4 (Ex. 3) at 426. Applying that construction, the Examiner later equated BIOS with memory: "Lewis [U.S. Patent No. 5,734,819] discloses an invention that stores license information in ***non-volatile memory*** (***which is the BIOS***, since it is being setup and used by the system program)." *Id.* at 512 (emphasis added).

Finally, Ancora selectively quotes (Dkt. 59 at 9) Judge Gonzales Rogers' *Apple* order:

> "BIOS" stands for <u>B</u>asic <u>I</u>nput/<u>O</u>utput <u>S</u>ystem; it is software code. No one disputes that a person of ordinary skill in the art reading the Claim in the context of the specification and the prosecution history would understand the ***"BIOS" to be the location in the computer where the software code was stored***. The

DEFENDANTS' RESPONSIVE
CLAIM CONSTRUCTION BRIEF
Case No. 2:16-cv-1919-RAJ

-2-

KNOBBE, MARTENS, OLSON & BEAR, LLP
925 Fourth Ave, Suite 2500, Seattle, WA 98104
(206) 405-2000

inventive aspect of the '941 Patent was to write information onto unused ***memory in the BIOS area*** of the computer.  The limiting aspect of the invention is to ***store information in the BIOS, not the type of computer that runs BIOS***….the Court will not define BIOS by the hardware architecture of the computer on which it runs.

Dkt. 59-8 (Ex. 7) at 707-08 (emphases added).   First, the full quote provides the context for her rejection of Apple's narrow position that "BIOS" applied to IBM PC-compatible computers only.  Second, the full quote repeatedly emphasizes that BIOS is memory.  Ancora does not try to refute her analysis.  Thus, Ancora cannot reconcile its position that "'BIOS' as 'memory' is non-sense" with the quote.  Dkt. 59 at 9.

Ancora leaves out a discussion of the appeal in this case on the *Alice* motion.  There, the Federal Circuit referred to "BIOS memory" six times.  Dkt. 59-10 (Ex. 9) at 729.

### 2.  Dr. Weissman Never Supported Ancora's Construction

Ancora next attacks Dr. Weissman's testimony.  Dr. Weissman did not offer any opinion on the construction of "BIOS" in his declaration for this case.  Instead, Ancora cites to Dr. Weismaan's declaration in support of the CBM.  But that declaration used the broadest reasonable interpretation standard, not *Phillips*, as required by USPTO guidelines at the time.

Despite offering no opinion on BIOS in this case, Ancora grilled Dr. Weissman regarding BIOS at his deposition.  Ancora claims that he "admitted BIOS was a conventional term with a clear meaning during his deposition." Dkt. 59 at 10 (citing Ex. 11 at 12:8-15:12).  Dr. Weisman actually testified that he "didn't find any terms that were nonconventional" and "I would not agree that all terms have clear meaning." Dkt. 59-12 at 744 (Ex. 11 at 13:4-12).  But he also agreed that the claims of the '941 Patent used BIOS memory to store data.  *Id.* at 748 (26:1-5). He repeatedly referred to BIOS as a ***memory*** in his CBM declaration.  *See, e.g.*, Dkt. 59-6 at 650 (Ex. 5 at ¶ 54) ("The claims describe the use [of] BIOS memory as memory to store data."); *id.* at ¶¶ 56, 57, 60, 67.  That evidence simply fails to support Ancora's assertion.

### 3.  The Patentee Explicitly Characterized an Aspect of the Alleged Invention

When Ancora finally confronts the patentees' statements in the prosecution history, it dismisses them as merely concerning the prior art.  Dkt. 59 at 10.  Rather, the representations distinguish the BIOS memory ***recited in the claims*** from cache memory.  *See Northpeak*

DEFENDANTS' RESPONSIVE
CLAIM CONSTRUCTION BRIEF
Case No. 2:16-cv-1919-RAJ

-3-

KNOBBE, MARTENS, OLSON & BEAR, LLP
925 Fourth Ave, Suite 2500, Seattle, WA 98104
(206) 405-2000

*Wireless, LLC v. 3COM Corp.*, 674 Fed. App'x. 982, 987 (Fed. Cir. 2016). The patentee explained what BIOS "is" and "is not" to distinguish memory recognized and used with an OS, such as Misra's local cache memory, from the *claimed* BIOS memory. It also represented "no file system *is* associated with the BIOS." Dkt. 59-3 (Ex. 2) at 220 (emphasis added).

Similarly, Ancora argues that "HTC's limitations (1) and (2) seek to *revert* the invention of the '941 patent to cover only the prior art." Dkt No. 59 at 11 (emphasis added). But even the Federal Circuit quote Ancora relies on says otherwise:

> The applicants explained that *their invention differed* from the prior art in that it both operated as an application running through an operating system and used the BIOS level for data storage and retrieval – a combination that was not previously taught and that an ordinary skilled application writer would not employ.

*Id.* (quoting *Apple*, 744 F.3d at 735) (emphasis added). HTC's construction underscores the features of the BIOS that differed from the cache of Misra. Misra disclosed an OS that wrote to cache, and that system would anticipate if the patentee did not claim using BIOS for license storage. Instead, the Examiner presented the combination of Misra using the BIOS of Ewertz. Thus, patentee explained that: "Software licensing management applications, such as the one of the present invention, are operating system (OS) level programs." Dkt 59-3 at 219. Using a BIOS was allegedly inventive because "there is no OS support whatsoever to write data to the system BIOS." *Id.* at 220. The patentee embraced features of the BIOS that distinguished its method. There would be no invention if an OS recognized BIOS as a storage device and BIOS had a file system—the patentee would not have been able to overcome the Examiner's rejection. If Ancora believes "Such a 'construction' would exclude the use of memory of a BIOS in the claimed method of the '941 patent" as it now argues, then the patentee misrepresented the invention. Dkt. 59 at 11. Ancora cannot claim that the patentee invented a new BIOS.

C.    **"using an agent…"**

Ancora presents a legally flawed theory that, because the claimed agent is software, it cannot be a § 112(f) (AIA) or § 112, ¶6 (pre-AIA) (with no substantial difference regarding functional claiming) limitation. "Agent" recites no structure and the step recites no act that produces the result. Furthermore, the specification fails to disclose an algorithm corresponding

DEFENDANTS' RESPONSIVE
CLAIM CONSTRUCTION BRIEF
Case No. 2:16-cv-1919-RAJ

-4-

KNOBBE, MARTENS, OLSON & BEAR, LLP
925 Fourth Ave, Suite 2500, Seattle, WA 98104
(206) 405-2000

to the recited function rendering the claim indefinite.

### 1. "agent" Lacks Structure Even if Construed as Software

The parties agree that the word "agent" refers to software. But that does not resolve the dispute. The issue is whether "agent" is or recites sufficiently definite structure. *Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, 830 F.3d 1341, 1348 (Fed. Cir. 2016). "Agent" is a generic term for code to accomplish some task. Ancora's evidence that "agent" is structure comes from its expert only. He opined that an "agent is a software routine. An agent would be understood by those skilled in the art to have that definitive structure … agent has a definite structure as a software routine." Dkt. 59-13 (Ex. 12) at 767-768. Jestice does not support that conclusion. He just assumes that "software routine" is structure. It is not.

A claim reciting generic software, like "agent" here, lacks structure. *Media Rights Techs. Inc. v. Capital One Fin. Grp.*, 800 F.3d 1366, 1372-73 (Fed. Cir. 2015). In *Media Rights*, the claims recited a "compliance mechanism," which was simply software to perform a task. *Id*. The court held that "the claims do not use the term 'compliance mechanism' as a substitute for an electrical circuit, or anything else that might connote a definite structure. Rather, the claims simply state that the 'compliance mechanism' can perform various functions." *Id*.

The same is true here. Nothing in the claim limitation describes how the "agent" interacts with other claimed components in a way that might inform the structural character or otherwise impart structure to the recited "agent." The specification never used the word "agent."

### 2. Commands in the Specification Do Not Save "Agent" from § 112(f)

Ancora's reliance on *Zeroclick, LLC v. Apple, Inc.*, 891 F.3d 1003, 1007 (Fed. Cir. 2018) is misplaced. Dkt. 59 at 16-18. There, the Federal Circuit criticized the district court for failing to address the presumption against mean-plus-function interpretation for claim terms not reciting "means." *Zeroclick*, 891 F. 3d at 1008-09. It also noted that Apple provided no evidentiary support to rebut the presumption. *Id*. In contrast, HTC embraced the presumption and explained facts overcoming it. The intrinsic evidence and ordinary meaning confirm agent is a nonce word for software. Thus, HTC's position does not suffer from the threshold problems in *Zeroclick*.

///

DEFENDANTS' RESPONSIVE
CLAIM CONSTRUCTION BRIEF
Case No. 2:16-cv-1919-RAJ

-5-

KNOBBE, MARTENS, OLSON & BEAR, LLP
925 Fourth Ave, Suite 2500, Seattle, WA 98104
(206) 405-2000

Ancora nonetheless argues three reasons the Federal Circuit in *Zeroclick* found error in treating certain terms as means-plus-function. Those three reasons do not apply to this case. First, Ancora explains that reciting functional language alone does not invoke § 112(f). Dkt. 59 at 16. HTC never argued otherwise. Instead, HTC argues that "agent" fails to recite **structure**. Other claims recite "agent" for additional, unrelated functions: Claims 7 (certifying the existence of a pseudo-unique key), 14 (encrypting a license record using a unique key), and 18 (extracting license information from a program, encrypting, verifying, and acting). This confirms that "agent" recites a black box for structure in the '941 Patent claims.

Second, Ancora argues that the "agent," like the *Zeroclick* terms "program" and "user interface code," specifically refers to "conventional [] code" and thus the limitation cannot be construed under § 112(f). Dkt. 59 at 16. This argument shortcuts the *Zeroclick* analysis. The Federal Circuit criticized "remov[ing] the terms from their context, which otherwise strongly suggests the plain and ordinary meaning of the terms." 891 F.3d at 1008. Regarding "program," the preamble of those claims recited that they may comprise "an update of an *existing* program." *Id.* (emphasis in original). The claim language "similarly tethers 'user interface code'—code meant to be updated using two configuration changes **recited in the claim**—to the code 'stored in a memory connected to the processor.'" *Id.* Thus, the claim language at issue in *Zeroclick* specifically stated that the relationship to conventional software. Based on that claim language, the words "program" and "user interface code" were explicit references to conventional programs or code existing in prior art, not a black box recitation of structure.

In contrast, there is no evidence here that the "agent" claim language explicitly referenced a conventional program existing in the prior art. Nor could it. As the Examiner stated in the Notice of Allowance, "More specifically, the closest prior art systems, singly or collectively, do not teach licensed programs running at the OS level interacting with a program verification structure stored in the BIOS to verify the program using the verification structure and having a user act on the program according to the verification." Dkt. 59-3 (Ex. 2) at 233. He then explained, "The present invention overcomes this difficulty by using an agent to set up a verification structure in the erasable, non-volatile memory of the BIOS." *Id.* That cannot be

DEFENDANTS' RESPONSIVE
CLAIM CONSTRUCTION BRIEF
Case No. 2:16-cv-1919-RAJ

-6-

KNOBBE, MARTENS, OLSON & BEAR, LLP
925 Fourth Ave, Suite 2500, Seattle, WA 98104
(206) 405-2000

conventional. If it were, there would be no invention.

Ancora cannot rely on "using E²PROM manipulation commands" in the specification to make its "conventional" argument. Commands alone are not a program. More importantly, Claim 1 does not recite those commands. That is the end of the inquiry under *Zeroclick*.

Third, Ancora argues that the evidence fails to demonstrate that "agent" "is used in common parlance as a substitute for means." Dkt. 59 at 17. But here, the term "agent" is a term that includes *any* software capable of performing the recited function, and thus is indistinguishable from using the statutory term "means for" or "step for." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350–51 (Fed. Cir. 2015); *see generally Synchronoss Techs., Inc. v. Dropbox Inc.*, No. 16-cv-00119, 2017 WL 6059302-HSG (N.D. Cal. Dec. 7, 2017) at *10. The file history confirms that the Examiner found several disclosures of software to be agents. *See* Dkt. 60 at 15-16. Not one of those agents referenced "using E²PROM manipulation commands" or an algorithm "to set up a verification structure in the erasable, nonvolatile memory of the BIOS." And Ancora's expert confirms "agent" is a nonce word. To explain how a person of ordinary skill in the art would understand the limitation, Jestice substituted "software programs or routines" for "agent" and then used the exact functional language from the claim. Dkt. 59-13 at 770 (Ex. 12 ¶ 14).

The very purpose of § 112(f) is to avoid this type of functional claiming at the point of novelty. As Judge Bryson explained in one of the cases Ancora cites, "Section 112 paragraph 6 was first enacted as part of the 1952 Patent Act 'in response to *Halliburton Oil Well Cementing Co. v. Walker*, 329 U.S. 1 (1946), which rejected claims that do not describe the invention but use conveniently functional language at the exact point of novelty.'" *Erfindergemeinschaft UroPep GbR v. Eli Lilly and Co.*, No. 2:15-cv-1202-WCB, 2016 WL 6138124 at *4, *6 (E.D. Tex. Oct. 21, 2016). None of the cases cited by Ancora permitting functional claiming for ancillary terms extend to functional claiming at the point of novelty.

### 3. Commands Are Not an Algorithm

Ancora contends the claim and specification supply the algorithm. Dkt. 59 at 19-20. But Ancora identifies no algorithm in the claim. It relies on the "E²PROM manipulation commands"

in the specification.

There is nothing in the specification explicitly linking that language to the claimed "agent." *See Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1211 (Fed. Cir. 2003) (the specification must "***clearly*** link[] or associate[] structure with the claimed function."). The specification only mentions the commands in the summary of the invention, not with the "setting up" step shown in Figure 2 and in col 6, lines 18-28. Ancora also does not confront the other claims of the patent that recite "agent." Claim 14 recites "the step of using an agent … includes ***encrypting*** a license record data in the program …." Claim 14, however, depends from Claim 1 which requires that the "program resid[es] in the volatile memory." The patent does not link "E$^2$PROM manipulation commands" with "volatile memory," let alone performing the claimed encrypting.

Ancora deflects the lack of an algorithm by creatively quoting Dr. Weissman's stating "[a]s HTC admits an 'algorithm [only] has to describe how to do something.'" Dkt. 59 at 20. *Id.* But Ancora's insertion of ***only*** completely changes the meaning. He explained that an "Algorithm has to describe ***how*** to do something." Dkt. 59-12 at 745 (Ex. 11 at 17:17-21). Ancora hides from Dr. Weissman's explanation that "like with the other functional blocks, a setting-up algorithm would have to describe, you know, how the setting up is being done in specifics." *Id.* at 746 (19:11-18). That is a criticism of the lack of disclosure, not a concession.

Ancora further mischaracterizes Dr. Weissman's testimony by arguing, "HTC also admits one skilled in the art knows how to store data with these commands *without any further instructions.*" Dkt. 59 at 20. However, Dr. Weissman actually explained, "I would know how to do that, but I would need to bring in additional documents and additional references to, for example, use the API software routines of the BIOS. But I would have to develop my own algorithm, and that's not disclosed in the '941 patent." Dkt. 59-12 at 746 (Ex. 11 at 21:12-17). Even Mr. Jestice refused to state that the phrase "using E$^2$PROM manipulation commands" discloses an algorithm. Dkt. 61-2 at 481 (Ex. I at 34:6-24). And his declaration states, "Such commands are ***encoded in a software routine*** and are well-known to those skilled in the art." *Id.* at 510 (Ex. J).

DEFENDANTS' RESPONSIVE
CLAIM CONSTRUCTION BRIEF
Case No. 2:16-cv-1919-RAJ

-8-

KNOBBE, MARTENS, OLSON & BEAR, LLP
925 Fourth Ave, Suite 2500, Seattle, WA 98104
(206) 405-2000

Case law demands more than reference to commands to show an algorithm. An algorithm is a "step-by-step procedure—for performing the claimed function," *Triton Tech of Texas, LLC v. Nintendo of Am., Inc.*, 753 F.3d 1375, 1379 (Fed. Cir. 2014), and explains the specific way each "function is performed," *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1318 (Fed. Cir. 2013). Ancora's method claims "describe[] an outcome, not a means for achieving [it]." *Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371, 1384 (Fed. Cir. 2009). Ancora did not disclose the basic steps that the microprocessor takes to perform the function.

The patent also does not identify any particular commands. It merely identifies a category of commands that could erase or modify data. "A bare statement that known techniques or methods can be used does not disclose structure." *See Triton*, 753 F.3d at 1379; *see also Ibormeith IP, LLC v. Mercedes Benz USA, LLC*, 732 F.3d 1376 1382 (Fed. Cir. 2013) ("A description of an algorithm that places no limitations on how values are calculated, combined, or weighted is insufficient to make the bounds of the claim understandable."). Reciting what type of command could be used cannot provide the requisite algorithm. *See Triton*, 753 F.3d at 1379 ("Disclosure of a class of algorithms that places no limitations on ***how*** values are calculated, combined, or weighted is insufficient to make the bounds of the claims understandable." (emphasis added)). And in the file history, the patentee explained:

> BIOS is a configuration utility. Software license management applications, such as the one of the present invention, are operating system (OS) level programs. Therefore, BIOS programs and software licensing management applications do not ordinarily interact or communicate because when BIOS is running, the computer is in a configuration mode, hence [sic] OS is not running. Thus, BIOS and OS level programs are normally mutually exclusive.

Dkt. 59-3 (Ex. 2) at 219. "Using $E^2$PROM manipulation commands" does not disclose an OS level program, or any way for BIOS programs and OS applications to interact or communicate.

4. **Enablement is a Separate Requirement From § 112(f) and Indefiniteness**

Ancora excuses the lack of an algorithm because "[a] patent need not teach, and preferably omits, what is well known in the art." Dkt. 59 at 17 (*citing Epistar Corp. v. ITC*, 566 F.3d 1321, 1336 (Fed. Cir. 2009) and *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1534 (Fed. Cir. 1987)). That quote addresses enablement, a separate requirement under 35

DEFENDANTS' RESPONSIVE
CLAIM CONSTRUCTION BRIEF
Case No. 2:16-cv-1919-RAJ

-9-

KNOBBE, MARTENS, OLSON & BEAR, LLP
925 Fourth Ave, Suite 2500, Seattle, WA 98104
(206) 405-2000

U.S.C. § 112.  Enablement has no bearing in determining whether a software claim is indefinite because the specification fails to recite an algorithm.  *See Blackboard*, 574 F.3d at 1385.  Simply put, "[a] patentee cannot avoid providing specificity as to structure simply because someone of ordinary skill in the art would be able to devise a means to perform the claimed function.  To allow that form of claiming under section 112, paragraph 6, would allow the patentee to claim all possible means of achieving a function." *Id*.  "Section 112, paragraph 6, is intended to prevent such pure functional claiming." *Id*. (citing *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed.Cir.2008)).  Ancora cannot rely on the knowledge of a person of ordinary skill in the art or the teachings of another document to supply the missing algorithm.

### 5. Ancora's Pre-*Williamson* Cases Cannot Save the Agent

Ancora points to a number of cases evaluating different types of claimed software to infer that reciting software alone is sufficient to avoid § 112(f).  Dkt. 59 at 17-18.  None of those cases involves a term that appears only in the claims and not in the specification.  And all of those cases use the old "strong presumption standard" prior to *Williamson*, 792 F.3d at 1349.

After *Williamson*, the landscape has changed significantly.  *See, e.g., Advanced Ground*, 830 F.3d at 1346–50 (claims to a "symbol generator" indefinite); *Twin Peaks Software, Inc. v. IBM Corp.*, 690 Fed. App'x 656, 661–65 (Fed. Cir. 2017) ("mechanism for managing said component"); *Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*, No. 2:16-cv-057, 2017 WL 2691227, *36–37 (E.D. Tex. June 22, 2017) ("selection module" and "key derivation module"); *Synachronoss Techs.*, 2017 WL 6059302, at *5–9 ("user login authenticator"); *Verint Sys. Inc. v. Red Box Recorders Ltd.*, 166 F. Supp. 3d 364, 379–84 (S.D.N.Y. 2016) ("computer application").  Ancora's patent is indistinguishable from this entire category of indefinite claims.

### 6. HTC's Means-Plus-Function Position Has Been Consistent

Ancora contends that HTC has shifted positions between the CBM petition and this proceeding.  Dkt. 59 at 19.  But in both proceedings, HTC explained why "using an agent" recites a means-plus-function limitation.  *See* Dkt. 59-6 (Ex. 5) at 655-57.  That position remains unchanged.  Ancora glosses over the difference in claim construction standards between the proceedings.  Under the broadest reasonable interpretation applicable for a CBM, the word

"agent" could refer to hardware or software as Dr. Weissman stated. *Id*. at 648. He explained that in his deposition. Dkt. 59-12 at 750 (36:17-25). Here, under *Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005), the "agent" refers to software in the context of Claim 1. That is undisputed, but does not save the claims from 112(f).

### 7. The Claims Fail to Recite *How* to Perform the "to set up" Function

Ancora argues that method claim limitations without the word "means" should not be construed as means-plus-function. Dkt. 59 at 14-15. But method claims may include means-plus-function limitations subject to § 112(f)—the Federal Circuit has in fact treated "mechanism" as a means-plus-function term in a method claim. *Media Rights,* 800 F.3d at 1371–75.

Construing "agent" as software leaves the limitation merely describing the data, the "verification structure," and the destination of that data "in the erasable, non-volatile memory area of the BIOS." The limitation would merely state what it accomplishes, and not how it is accomplished, invoking § 112(f). *Seal-Flex, Inc. v. Athletic Track & Ct. Const.*, 172 F.3d 836, 849-850 (Fed. Cir. 1999). *See also Masco Corp. v. United States*, 303 F.3d 1316, 1326 (Fed. Cir. 2002). A step in a method claim is functional when it recites a specified function (*i.e.*, result) without reciting the acts that produce that result. *Seal-Flex,* 172 F.3d at 848-49. In other words, the "function" of a method claim element is *what* the element accomplishes. *Id.* at 849. And the "acts" correspond to the *way* the function is accomplished. *Id.* at 849-50; *see Masco*, 303 F.3d at 1326. Ancora points to nothing in the claim that recites an act.

Ancora sidesteps the issue by placing undue weight on the Examiner's alleged understanding of the "agent." Dkt. 59 at 13. The file history demonstrates that Examiner referred to various software, for example within Misra, as agents. *See* Dkt. 59-3 (Ex. 2) at 207. None of those agents store data in the erasable, non-volatile memory of the BIOS. Thus, Ancora has no basis for concluding that the Examiner understood "agent" to refer to how "to set up a verification structure in … the BIOS." Ancora also incorrectly attributes the addition of "agent" to the Examiner without evidence. *See* Dkt. 61-2 (Ex. J) at 510 ("I understand that during prosecution, the term 'agent' was added to the claim based on the suggestion of the Examiner."). But Mr. Jestice admitted that "there is no record of the actual conversation" and that the

DEFENDANTS' RESPONSIVE
CLAIM CONSTRUCTION BRIEF
Case No. 2:16-cv-1919-RAJ

-11-

KNOBBE, MARTENS, OLSON & BEAR, LLP
925 Fourth Ave, Suite 2500, Seattle, WA 98104
(206) 405-2000

information in fact came from Ancora's attorney.  *Id.* at 484 (Ex. I at 46:19-48:23).

Ancora also glosses over *where* the "agent" would store its data in BIOS memory.  Dkt. 59 at 13.  The specification warned against "tampering" with "data residing in the BIOS" or "inadvertently chang[ing]" the data because it "is necessary for the computer's operability."  Dkt. 59-2 at 9 (Ex. 1 at 3:9-14).  Writing a verification structure to the wrong location in the BIOS "using $E^2PROM$ manipulation commands" would render the computer inoperable.  Identifying such a location in the BIOS is a "challenging task," as explained the 2001 whitepaper that Ancora cites.  Dkt. 59-3 at 60.  The whitepaper states "it is impossible to assume that specific available memory locations in one PC's BIOS will be available to another's."  *Id.*  Thus, Ancora's reliance on it confirms that neither "using $E^2PROM$ manipulation commands" nor "using an agent" recite *how* to perform the step.

D.  <u>"acting on the program according to the verification"</u>

Ancora argues that HTC's construction changes the meaning of the claim.  *See* Dkt. 59 at 21-22.  But HTC's proposed construction is consistent with the '941 Patent's specification and the intended purpose of Claim 1 – "[a] method of restricting software operation within a license."

Ancora also argues that the doctrine of claim differentiation cautions against HTC's construction because it would make Claim 10 superfluous.  Dkt. 59 at 22.  Claim 10 further narrows the "acting" step by requiring "restricting … if the comparing yields non-unity or insufficiency."  Thus, Claim 10 adds a narrowing limitation that is not superfluous.

E.  <u>"license authentication bureau" (Claim 2)</u>

Ancora attacks the wrong construction.  The '941 Patent provides the definition "a telecommunications accessible processor where functions such as formatting, encrypting, and verifying may be performed."  Dkt. 60 at 22.  *See Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1380 (Fed. Cir. 2009) ("When a patentee explicitly defines a claim term in the patent specification, the patentee's definition controls.") (citing *Phillips*, 415 F.3d at 1321).

/ / /

/ / /

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: October 7, 2019         By: *s/ Colin B. Heideman*
                                   Colin B. Heideman (SBN 44,873)
                                   colin.heideman@knobbe.com
                                   KNOBBE, MARTENS, OLSON & BEAR, LLP
                                   925 Fourth Avenue, Suite 2500
                                   Seattle, WA  98104
                                   Phone: (206) 405-2000
                                   Facsimile: (206) 405-2001

                                   Craig S. Summers *(Pro Hac Vice)*
                                   craig.summers@knobbe.com
                                   Irfan A. Lateef *(Pro Hac Vice)*
                                   Irfan.lateef@knobbe.com
                                   Brian C. Claassen (*Pro Hac Vice*)
                                   brian.claassen@knobbe.com
                                   Daniel C. Kiang (*Pro Hac Vice*)
                                   daniel.kiang@knobbe.com
                                   KNOBBE, MARTENS, OLSON & BEAR, LLP
                                   2040 Main Street, 14th Floor
                                   Irvine, CA 92614
                                   Phone: (949) 760-0404
                                   Facsimile: (949) 760-9502

                                   Attorneys for Defendants
                                   HTC AMERICA, INC. and HTC CORPORATION

# CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2019, the forgoing **DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF** was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Duncan E. Manville<br>Sarah Gohmann Bigelow<br>**SAVITT BRUCE & WILLEY LLP**<br>1425 Fourth Avenue, Suite 800<br>Seattle, WA 98101-2272<br>Tel.: (206) 749-0500<br>Email: dmanville@sbwllp.com<br>Email: sgohmannbigelow@sbwllp.com | Mark A. Cantor<br>John S. LeRoy<br>Marc Lorelli<br>John P. Rondini<br>**BROOKS KUSHMAN P.C.**<br>1000 Town Center, 22nd Floor<br>Southfield, MI 48075-1238<br>Tel.: (248) 358-4400<br>Email: mcantor@brookskushman.com<br>       jleroy@brookskushman.com<br>       mlorelli@brookskushman.com<br>       jrondini@brookskushman.com |
| Dated:  October 7, 2019 | By: *s/ Colin B. Heideman*<br>Colin B. Heideman (SBN 44,873)<br>colin.heideman@knobbe.com<br>KNOBBE, MARTENS, OLSON & BEAR, LLP<br>925 Fourth Avenue, Suite 2500<br>Seattle, WA  98104<br>Phone: (206) 405-2000<br>Facsimile: (206) 405-2001 |

31415020.2